**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____

| | |
|---|---|
| LISA FLAGG on Behalf of Herself and, | : |
| All Others Similarly Situated, | : |
| | : |
| Plaintiff, | :   CASE NO. 1:15-cv-00324-MHC |
| | : |
| v. | : |
| | : |
| FIRST PREMIER BANK, a South Dakota | : |
| State-Chartered Bank, | : |
| | : |
| Defendant. | : |

_____

## DEFENDANT FIRST PREMIER BANK'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS PROCEEDINGS

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................... ii

I. INTRODUCTION .................................................................................1

II. ARGUMENT .......................................................................................2

    A.    Plaintiff Has Not Met Her Burden to Show NAF Is Integral to
            the Arbitration Agreement. .........................................................2

            1.    NAF Was Not Important to Plaintiff. ..........................3

            2.    The Terms of the Arbitration Agreement Make Clear
                  that NAF Was a Logistical Consideration Subordinate
                  to the Parties' Overriding Intent to Arbitrate. ............3

            3.    Plaintiff's Attempt to Show NAF Is Integral Based on
                  First International's Continued Designation of NAF
                  After NAF Became Unavailable Is Without Merit. ...................6

    B.    The Eleventh Circuit's Decision In *Inetianbor* Supports First
            PREMIER's Motion to Compel Arbitration. .........................7

    C.    Eleventh Circuit Cases Addressing the Unavailability of NAF
            Have Consistently Compelled Arbitration. ............................8

    D.    Plaintiff Deliberately Chose Not to Oppose Arbitration Based
            on the Arbitration Agreement's Identification of NAF. ....................13

    E.    AAA or JAMS Should Be Substituted for NAF. ...............................15

III. CONCLUSION ..................................................................................15

CERTIFICATE OF COMPLIANCE ......................................................17

CERTIFICATE OF SERVICE ...............................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adler v. Dell, Inc.*,
   No. 08-cv-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009)......................13

*Beverly Enterprises, Inc. v. Cyr*,
   No. CV 114-069, 2015 WL 409581 (S.D. Ga. Jan. 29, 2015) ..........................12

*Brown v. ITT Consumer Financial Corporation*,
   211 F.3d 1217 (11th Cir. 2000) ..................................................................9, 10

*Carideo v. Dell, Inc.*,
   No. C06-177JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009) ...................5

*Carr v. Gateway*,
   944 N.E.2d 327 (Ill. 2011)................................................................................5

*In re Checking Account Overdraft Litig.*
   685 F. 3d 1269 (11th Cir. 2012) ......................................................................14

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012).......................................................................................12

*Geter v. Galardi South Enters., Inc.*,
   No. 14-21896-CIV, 2015 WL 1268276 (S.D. Fla. Mar. 19, 2015).............2, 4, 5

*Green Tree Fin. Corp.—Ala. v. Randolph*,
   531 U.S. 79 (2000).............................................................................................2

*Inetianbor v. CashCall*,
   768 F.3d 1346 (11th Cir. 2014) ...............................................................1, 7, 8

*Khan v. Dell Inc.*,
   669 F.3d 350 (3d Cir. 2012) ..............................................................................5

*Klima v. Evangelical Lutheran Good Samaritan Soc.*,
 No. 10-CV-1390-JAR-JPO, 2011 WL 5412216 (D. Kan. Nov. 8,
 2011) .................................................................................................5

*Meskill v. GGNSC Stillwater Greeley LLC*,
 862 F. Supp. 2d 966 (D. Minn. 2012) ...............................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985) ...................................................................5, 11

*Pendegrast v. Spring Nextel Corporation*,
 691 F.3d 1224 (11th Cir. 2012) .......................................................11

*Ranzy v. Extra Cash of Texas, Inc.*,
 No. H-09-3334, 2010 WL 936471 (S.D. Tex. Mar. 11, 2010) ...........5

*Roney v. Rent-A-Center*,
 No. 1:07-CV-1548, 2007 WL 4373599 (N.D. Ga. Dec. 5, 2007) .......2

*Sankey v. Sears, Roebuck & Co.*,
 100 F. Supp. 2d 1290 (M.D. Ala. 2000) ............................................6

**Statutes**

9 U.S.C. § 5 .........................................................................*passim*

# I. __INTRODUCTION__

The Court should apply the FAA's clear directive to "designate and appoint an arbitrator" "if for any reason there shall be a lapse in the naming of an arbitrator." 9 U.S.C. § 5. Appointment of a substitute for the National Arbitration Forum ("NAF") is particularly appropriate under the facts and circumstances of this case, because:

- Plaintiff "wishes to arbitrate a consumer rights dispute with . . . First Premier Bank" (Compl., Ex. A);

- Plaintiff has not met her burden to show that the parties' intent was to arbitrate before NAF or not to arbitrate at all;

- Contract provisions referring to arbitration generally, without any mention of NAF, pervade the underlying arbitration agreement and make clear that the parties' overriding intent was to arbitrate;

- The Eleventh Circuit's decision in *Inetianbor* demonstrates that the "integral" analysis is one of substance, and here, Plaintiff identifies nothing significant about NAF itself that makes its use as an arbitration administrator of essential importance;

- Every Eleventh Circuit court that has addressed the unavailability of NAF has compelled arbitration;

- Plaintiff does claim she would be prejudiced in any way by the substitution of AAA or JAMS for NAF, which are administrator options that First PREMIER presented to Plaintiff in December 2013 and administrators that Plaintiff has separately agreed to; and

- Plaintiff has waived her NAF-based objection to arbitration based on her knowing and deliberate choice not to resist arbitration on that basis in her first and nearly identical lawsuit against First PREMIER.

1

## II.  ARGUMENT

**A.  Plaintiff Has Not Met Her Burden to Show NAF Is Integral to the Arbitration Agreement.[1]**

Plaintiff does not dispute that it is her burden to prove that NAF is integral to her arbitration agreement, and she agrees that any doubts about whether her claims are arbitrable must be resolved in favor of arbitration.  *Green Tree Fin. Corp.— Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Roney v. Rent-A-Center*, No. 1:07-CV-1548, 2007 WL 4373599, *2 (N.D. Ga. Dec. 5, 2007) ("It is well settled that a party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *see Geter v. Galardi South Enters., Inc.*, No. 14-21896-CIV, 2015 WL 1268276, *1 (S.D. Fla. Mar. 19, 2015) ("As a result of the well-established federal policy favoring arbitration, the burden is on the party opposing arbitration to prove to the court that arbitration is improper.").  Plaintiff has not met her burden to show her claims are unsuitable for arbitration here.

---

[1] Plaintiff incorrectly asserts that First PREMIER is "attempt[ing] to ignore controlling precedent."  (Doc. 22 at 8.)  First PREMIER acknowledges that "the Court is constrained by Eleventh Circuit decisions holding that in deciding whether to appoint a substitute under 9 U.S.C. § 5, the Court considers whether an unavailable administrative body is 'integral' to the arbitration agreement" (Doc. 17-1 at 13 n.4), but maintains that both the plain language of the FAA, 9 U.S.C. § 5, and the Eleventh Circuit test require appointment of a substitute here.  (*See id.* at 11-13.)

### 1.    NAF Was Not Important to Plaintiff.

Plaintiff does not attempt to show that NAF was important to her.  And any such claim would be at odds with her undisputed agreement to arbitrate using different administrative bodies (AAA and JAMS), her knowing choice not to resist arbitration in her 2013 lawsuit against First PREMIER based on the arbitration agreement's designation of NAF, and her unfounded aspersions about NAF.

### 2.    The Terms of the Arbitration Agreement Make Clear that NAF Was a Logistical Consideration Subordinate to the Parties' Overriding Intent to Arbitrate.

Plaintiff relies on the terms of her arbitration agreement to argue that references to NAF "pervade[] the arbitration agreement,"  that NAF was critical to First International, and that appointment of a substitute for NAF is, therefore, improper.  (Doc. 22 at 19.)  But when read as a whole, as it must be, Plaintiff's arbitration agreement demonstrates an overriding intent to arbitrate.

Tellingly, Plaintiff does not acknowledge, discuss, or respond at all to the many ways that her arbitration agreement generally refers to arbitration without any linkage to NAF—making clear that NAF was an ancillary and subordinate designation.  This pervasive general arbitration language, which is not present in the cases on which Plaintiff relies, takes many different forms.

In addressing how the arbitrator is to conduct arbitration, for example, the agreement makes no mention of NAF, stating that "THE ARBITRAT[OR] SHALL NOT CONDUCT CLASS ARBITRATION" and that Plaintiff would not be allowed to serve "IN ANY . . . REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION."  (Loan Agreement at pg. 4.)  Likewise, the agreement's general heading is "**AGREEMENT TO ARBITRATE ALL DISPUTES**," and the agreement also expressly states that it is governed by the "Federal Arbitration Act 9 U.S.C. Sections 1-16," thereby incorporating the FAA's substitution provision.  (*Id.*)  Furthermore, the agreement includes two "**NOTICE**" provisions and a "**SURVIVAL**" provision, all of which are set apart from the sentences referring to NAF and all of which refer generally to the parties' agreement to resolve disputes through arbitration with no reference to NAF.  (*Id.* at 4-5.)

The pervasive, general references to arbitration in the agreement confirm that NAF, which is simply an administrative body, was not essential.  Plaintiff's conclusory assertion that the NAF references in her arbitration agreement are pervasive is at odds with a plain reading of the entire agreement.  Not counting the three sentences referring to NAF, the agreement refers generally to "arbitration," the "agreement to arbitrate" or "the arbitrator" fourteen times without any mention of NAF.  (*Id.*)  When the few NAF references are shorn from the agreement, it is

still unmistakably clear that the parties' intended to arbitrate.[2]   NAF was a

subordinate detail.   And at best for Plaintiff, the parties' contracting intent is

ambiguous, which means it must be construed in favor of arbitration.   *Mitsubishi

Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In any event, Plaintiff's argument that NAF was critical to First International

is illogical.   NAF is an administrator, not the arbitrator.   Plaintiff's attempt to

destroy the arbitration agreement in its entirety based on the unavailability of NAF

to carry out the logistical administration of the arbitration exalts form over

---

[2] In resisting arbitration, Plaintiff relies on some out-of-circuit cases holding that NAF was integral to the specific agreement to arbitrate.  (Doc. 22 at 10-11, 23.)  But none of the cases that Plaintiff discusses addressed arbitration agreements with the pervasive non-NAF arbitration language included here, and the arbitration language in these cases is not "identical" to that in Plaintiff's agreement (*id.* at 10), as Plaintiff incorrectly maintains.  *See, e.g., Ranzy v. Extra Cash of Texas, Inc.*, No. H-09-3334, 2010 WL 936471 (S.D. Tex. Mar. 11, 2010), *aff'd sub nom. Ranzy v. Tijerina*, 393 F. App'x 174 (5th Cir. 2010); *Klima v. Evangelical Lutheran Good Samaritan Soc.*, No. 10-CV-1390-JAR-JPO, 2011 WL 5412216 (D. Kan. Nov. 8, 2011); *Carideo v. Dell, Inc.*, No. C06-177JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009); *Carr v. Gateway*, 944 N.E.2d 327 (Ill. 2011).  These cases are distinguishable based on the terms of Plaintiff's agreement as a whole and Plaintiff's conduct.  And, to the extent these out-of-jurisdiction cases apply at all, such cases go to show that Plaintiff's arbitration agreement is reasonably susceptible to multiple interpretations, meaning it must be construed in favor of arbitration.  *See Khan v. Dell Inc.*, 669 F.3d 350, 355 (3d Cir. 2012) ("Our finding of ambiguity is confirmed by the conflicting interpretations of this language adopted by the courts that have considered it").

substance, particularly when reputable administrative substitutes like AAA and JAMS are readily available and would not prejudice Plaintiff in the least.

**3.    Plaintiff's Attempt to Show NAF Is Integral Based on First International's Continued Designation of NAF After NAF Became Unavailable Is Without Merit.**

In arguing NAF was essential to First International, Plaintiff makes much of the passage of time between when NAF stopped accepting consumer arbitrations (July 2009) and the execution of Plaintiff's underlying loan agreement (August 2012).  The objectively reasonable inference, however, is that First International mistakenly continued to reference NAF in its contracts and NAF itself was so *unimportant* to First International, it did not know that NAF had stopped accepting consumer arbitrations.  *See Sankey v. Sears, Roebuck & Co.*, 100 F. Supp. 2d 1290, 1297 n.7 (M.D. Ala. 2000) (finding that passage of time without a change to the unavailable forum made it *less likely* the forum was integral); *Meskill v. GGNSC Stillwater Greeley LLC*, 862 F. Supp. 2d 966, 977 (D. Minn. 2012) (drawing the inference that the unavailable forum continued to be mistakenly identified because it was simply a form contract).[3]  There is certainly no evidence that First

---

[3] Plaintiff's various attempts to undermine NAF and hypothesize that First International selected NAF because it believed it would get favorable arbitration results by utilizing NAF are improperly supported, not based on competent evidence, and grounded in speculation.  Likewise, the inadmissible and improperly

International, a Utah-based business, knew of the development.  At best for Plaintiff, there is no evidence about the reasons for the passage of time without a change to First International's form.  Thus, because Plaintiff has the burden to show that arbitration is improper and she has not done so here, First PREMIER's motion to compel arbitration should be granted.

**B.     The Eleventh Circuit's Decision In *Inetianbor* Supports First PREMIER's Motion to Compel Arbitration.**

The latest Eleventh Circuit case addressing the "integral" analysis is *Inetianbor v. CashCall*, 768 F.3d 1346 (11th Cir. 2014).  Plaintiff again contends that *Inetianbor* compels denial of First PREMIER's motion, arguing that the arbitration agreement in *Inetianbor* is analogous to her arbitration agreement. (Doc. 22 at 19.)  But Plaintiff does not even attempt to respond to the myriad of ways in which the circumstances and agreement in *Inetianbor* are materially different from those here.  Indeed, the unique Tribal factors emphasized by the Eleventh Circuit in *Inetianbor* make clear that the "integral" analysis is one of substance and cannot be reduced to the superficial counting exercise that Plaintiff urges the Court to employ.  (*Compare* Doc. 17-1 at 22-24 (distinguishing *Inetianbor*); *with* Doc. 22 at 12.)

---

authenticated hearsay documents on which Plaintiff relies should be stricken from the record.  (Doc. 22-1 at 27-28 & 35-86 of 87.)

In *Inetianbor*, the Eleventh Circuit determined that the Tribal arbitration forum was integral to the arbitration agreement based on the several substantive connections between the Tribal arbitration forum, the Tribal lender, and the terms of the arbitration agreement, which included multiple jurisdictional and choice-of-law connections to the Tribe in addition to the requirement that the arbitration be conducted by a representative of the Tribe.[4]   In other words, there was actually something significant about the Tribal arbitration forum that made it of essential importance to the parties.   In stark contrast, here, none of the same factors are present, and Plaintiff has not shown that NAF has substantive significance of any kind.   Plaintiff does not even attempt to show why AAA or JAMS would not be suitable substitutes.   In short, *Inetianbor* does not help Plaintiff and serves as a useful contrast to this case, illustrating why NAF is not integral.

## C.   Eleventh Circuit Cases Addressing the Unavailability of NAF Have Consistently Compelled Arbitration.

Plaintiff argues "the law of this Circuit is indisputably against [First PREMIER]," but she cannot cite to a single federal case from an Eleventh Circuit

---

[4] Trying to build on *Inetianbor*, Plaintiff attempts to suggest that tribal law is somehow germane to this motion by referencing "Chippewa Cree tribal law." (Doc. 22 at pg. 23 n.21.)  But tribal law is <u>not</u> referenced in the First International loan agreement and is instead referenced in the arbitration agreement First PREMIER submitted to demonstrate Plaintiff's separate agreement to arbitration before AAA and JAMS.  (*See* Doc. 17-1 at 2-3, 15, 24-25.)

court that addressed NAF's unavailability and declined to compel arbitration. (Doc. 22 at 2.) To the contrary, *every federal decision to address NAF's unavailability within the Eleventh Circuit has compelled arbitration* and approved a substitute under 9 U.S.C. § 5.  In *Brown v. ITT Consumer Financial Corporation*, the Eleventh Circuit addressed arbitration language substantially identical to language included in Plaintiff's agreement, stating that any dispute "shall be resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum," and held that NAF's unavailability did not preclude the court from requiring arbitration under the FAA.  211 F.3d 1217, 1222 (11th Cir. 2000).

Plaintiff attempts to distinguish *Brown*, accuses First PREMIER of "utterly misstat[ing]" its ruling, and asserts that *Brown* only "held that the selection of the NAF Code alone was insufficient evidence that the NAF was the chosen forum for arbitration."  (Doc. 22 at 18.)  But the suggestion that NAF was not actually the chosen arbitration forum in *Brown* is irreconcilable with *Brown* itself, which characterized the issue as "Failure of Chosen Forum," called NAF "the specified forum," and held there was insufficient evidence that the "choice of NAF as the arbitration forum" was integral such that the arbitration agreement should be destroyed.  211 F.3d at 1222.  There was no doubt that NAF was the specified forum in *Brown*, but the Eleventh Circuit simply concluded that the party resisting

arbitration did not make a clear showing that NAF was so critical to the arbitration agreement that arbitration could not go forward without it.  The same is true here.

Plaintiff also attempts to escape *Brown*'s holding by arguing that her arbitration agreement includes additional logistical references to NAF that were apparently not present in *Brown*, and that these few additional NAF references in relation to how to file a claim, NAF's web address, NAF's potential fee waiver, and NAF's mailing address make this case distinguishable.  (Doc. 22 at 12.) According to Plaintiff, these provisions show that NAF is the "exclusive" arbitral forum in the agreement.[5]  (Doc. 22 at 5.)

At most, the several administrative and logistical references to NAF evidence that—just as in *Brown*—NAF was the specified administrative forum. Indeed, such is the case whenever an unavailable arbitration administrator leads to the Court's involvement under 9 U.S.C. § 5.  As Plaintiff would have it, any time a specified administrative body is unavailable, substitution cannot be made as a matter of law, and arbitration cannot be had.  This overreaching position is

---

[5] First PREMIER continues to dispute Plaintiff's characterization of NAF as the "exclusive" arbitral forum.  (*See* Doc. 17-1 at 16.)  This is little more than short-hand for Plaintiff's urged conclusion that the parties' intended to arbitrate with NAF as the administrator or not to arbitrate at all.  But notably, the term "exclusive" is not used in the arbitration agreement.  And as set forth herein, Plaintiff has not come close to making the requisite showing of such intent, and her position is incompatible with the arbitration agreement as a whole.

baseless. If correct, it would make a nullity of 9 U.S.C. § 5 and incentivize parties to be as vague as possible in drafting arbitration agreements.

This case still comes within the holding in *Brown*. Here too, there is insufficient evidence—and certainly not clear evidence—that the parties to the arbitration agreement intended to arbitrate before NAF or not to arbitrate at all. *See Mitsubishi Motors*, 473 U.S. at 626 (the parties' contracting "intentions are generously construed as to issues of arbitrability").

Moreover, additional Eleventh Circuit decisions compelling arbitration notwithstanding NAF's unavailability support First PREMIER's position. In *Pendegrast v. Spring Nextel Corporation*, the Eleventh Circuit rejected "as meritless" the argument "that the contract's designation of the now-defunct National Arbitration Forum as the arbitral forum was an integral component of the arbitration clause." 691 F.3d 1224, 1236 n.13 (11th Cir. 2012). That the Eleventh Circuit did not treat the issue at length does not change its holding or precedential impact, contrary to Plaintiff's assertions. The Supreme Court too has affirmed a lower court decision compelling arbitration notwithstanding NAF's unavailability.[6] *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 677 & n.2 (2012).

---

[6] In *CompuCredit*, NAF's unavailability was referenced in a footnote in Justice Ginsburg's dissent, and Plaintiff attempts to chide First PREMIER for

Similarly, the Southern District of Georgia, in *Beverly Enterprises, Inc. v. Cyr*, declined to scuttle the parties' arbitration agreement and exercised its FAA substitution authority where NAF was unavailable and the arbitration-agreement language provided that disputes "shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum Code of Procedure."  No. CV 114-069, 2015 WL 409581 (S.D. Ga. Jan. 29, 2015).  That the arbitration agreement in *Beverly* included only one reference to NAF does not mean whether an identified administrative body is "integral" is a function of the number of references to the forum in the arbitration agreement, as Plaintiff contends.  And it also does not change that *Beverly* is yet another example of an Eleventh Circuit case in which NAF was specified, NAF was unavailable, and the court had no difficulty compelling arbitration under 9 U.S.C. § 5.

Attempting to distinguish the many cases in which courts have compelled arbitration notwithstanding similar contract language and the unavailability of NAF (Doc. 17-1 at 22 (citing cases)), Plaintiff argues that those courts have done so because the language at issue was "permissive" and did not use the word "shall," citing *Adler v. Dell, Inc.*, No. 08-cv-13170, 2009 WL 4580739 (E.D. Mich.

citing the footnote.   (Doc. 22 at 9 n.8.)   Plaintiff misses the point.   The *CompuCredit* decision is Supreme Court precedent in which the majority, which prevailed over Justice Ginsburg's dissent, compelled arbitration, notwithstanding NAF's unavailability as observed as a factual matter by Justice Ginsburg.

Dec. 3, 2009).  (Doc. 22 at 14-15 n.15.)  But this is simply wrong.  In *Adler*, the arbitration agreement said that claims "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) . . . ."  *Id.* at *1.  The court held that notwithstanding the arbitration agreement's use of the word "EXCLUSIVELY," NAF was not integral.  *Id.* at *2-5.  And the court's analysis in no way emphasized that the agreement advised consumers: "Information *may* be obtained and claims may be filed with the NAF or at P.O. Box 50191, Minneapolis, MN 55405," which is what Plaintiff implausibly claims to be the crux of the decision.  *Id.* (emphasis added).

**D.      Plaintiff Deliberately Chose Not to Oppose Arbitration Based on the Arbitration Agreement's Identification of NAF.**

        In her 2013 lawsuit making claims against First PREMIER that are identical to the claims she makes again here, Plaintiff deliberately chose not to oppose First PREMIER's motion to compel arbitration based on the underlying arbitration agreement's reference to NAF.  Plaintiff does not argue that she errantly overlooked her NAF objection or deny that this was a deliberate and knowing choice, acknowledging it was "generally known that the NAF was barred from accepting consumer arbitrations in 2009."  (Doc. 22 at 2 n.3.)

Plaintiff nevertheless attempts to side step the decision not to raise the NAF issue by arguing that First PREMIER "neglected to inform the court that it was attempting to compel arbitration in an unavailable forum." (Doc. 22 at 2 n.1.) But this turns the parties' burdens on their head. (*See infra* at pg. 2 (citing cases).) The party resisting arbitration bears the burden to prove claims are unsuitable for arbitration. It was Plaintiff's burden to oppose arbitration based on NAF had it been a basis for doing so, and she knowingly chose not to do so.

First PREMIER's argument that Plaintiff has waived her NAF-based challenge to arbitration is no "Hail Mary." (Doc. 22 at 24.) Courts regularly find that litigants relinquish legal arguments and positions through their inaction, and such a waiver is not a function of court action. Moreover, contrary to Plaintiff's contention, First PREMIER has, in fact, been prejudiced by Plaintiff's conduct in the form of the legal fees and costs incurred in a year-long case with 13 substantive motions and 39 briefs, which Plaintiff withdrew so she could re-brief the arbitration motion again. This Court can and should find Plaintiff's NAF-based argument is waived. *See In re Checking Account Overdraft Litig.* 685 F. 3d 1269,

1274 (11th Cir. 2012) (defendant waived one of its arbitration arguments by not making it to the district court when defendants first sought to compel arbitration).[7]

## E.    AAA or JAMS Should Be Substituted for NAF.

Plaintiff has admitted that she "wishes to arbitrate" her dispute with First PREMIER.  (Compl., Ex. A.)  As early as December 2013, First PREMIER offered to arbitrate before AAA or JAMS, which are administrators that Plaintiff has already separately agreed to.  (Doc. 17-2, Ex. 1.)  And Plaintiff has still not attempted to identify how she would be prejudiced by the substitution of AAA or JAMS in place of NAF.  What's more, Plaintiff's knowing decision not to raise the issue in her first lawsuit demonstrates it is not integral to her.  Under the totality of the circumstances before the Court, the Court should appoint a substitute for NAF.

## III.  CONCLUSION

First PREMIER respectfully requests that the Court grant this motion, compel arbitration, appoint a substitute for NAF under 9 U.S.C. § 5, and stay or dismiss Plaintiff's claims against First PREMIER.

---

[7] Plaintiff's fall-back argument that it cannot have waived her NAF-based challenge to arbitration because the parties would inevitably have had to come back to Court for the appointment of a substitute administrator similarly fails. (Doc. 22 at 25.)  There are any number of ways the dispute could have resolved absent the appointment of a substitute for NAF, including Plaintiff's agreement to the AAA and JAMS arbitration forums that First PREMIER offered in December 2013, settlement, or Plaintiff declining to further pursue the case.

Respectfully submitted this 27th day of April, 2015.

By:   /s/ Scott E. Zweigel
**PARKER, HUDSON, RAINER & DOBBS LLP**
William J. Holley, II
Georgia Bar No. 362310
Scott E. Zweigel
Georgia Bar No. 786616
285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Tel: 404-523-5300
Fax: 404-522-8409

with

**LINDQUIST & VENNUM LLP**
James P. McCarthy
John C. Ekman
Bryan R. Freeman
(admitted *pro hac vice*)
4200 IDS Center
80 South 8th Street
Minneapolis, Minnesota  55402
Tel: (612) 371-3211
Fax: (612) 371-3207

***Attorneys for First PREMIER Bank***

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1(D), I certify that the foregoing brief has been prepared in conformity with Local Rule 5.1. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

This 27th day of April, 2015.

Respectfully submitted,


*/s/ Scott E. Zweigel*
Scott E. Zweigel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2015, I electronically filed the foregoing **DEFENDANT FIRST PREMIER BANK'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will send notifications of such filings to all counsel of record in this action.

This 27th day of April, 2015.

Respectfully submitted,

*/s/ Scott E. Zweigel*
Scott E. Zweigel